## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

RASHEE DONELL JOHNSON,

        Petitioner,

v.                                          ACTION NO.   2:19cv462

HAROLD W. CLARKE,
Director of the Virginia
Department of Corrections,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

        This matter is before the Court on Rashee Donell Johnson's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the motion to dismiss filed by respondent Harold W. Clarke, Director of the Virginia Department of Corrections ("respondent").   This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.   For the following reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 7, be **GRANTED,** and that the petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

# I.      STATEMENT OF THE CASE

In his *pro se* petition pursuant to 28 U.S.C. § 2254, petitioner Rashee Donell Johnson

("Johnson") alleges his federal rights were violated when he was convicted in the Circuit Court

for Henrico County, following a bench trial on March 24, 2016, of distribution of heroin and

possession with intent to distribute an imitation controlled substance.   ECF No. 1 at 1, 59; ECF

No. 9-2.   Johnson was sentenced on June 10, 2016, to 40 years in prison with 36 years suspended.

ECF No. 9-1.

On December 16, 2016, the Court of Appeals of Virginia denied Johnson's appeal, which

challenged the sufficiency of the evidence.   ECF No. 9-3.   The Court of Appeals summarized the

evidence presented at trial, in the light most favorable to the Commonwealth, as follows:

> [O]n August 19, 2015, Detective Jesse Wignor conducted a controlled purchase of
> drugs.   Detective Wignor used Tammy Dowdy as a confidential informant.
> Dowdy had been stopped two days earlier for possession of heroin and
> paraphernalia.   Dowdy cooperated with police in order to avoid being charged.
>
> Prior to the controlled buy, the police searched Dowdy and her vehicle.   Then, the
> police gave Dowdy $50 for the purchase.[1]   Dowdy called [Johnson] and arranged
> to meet him.   Detective Wignor followed Dowdy and witnessed [Johnson]
> standing next to Dowdy's car door.   After [Johnson] left the area, Detective
> Wignor arranged to meet Dowdy.   He recovered a lottery ticket containing a
> "knotted baggie of brown powder."   Dowdy was searched and no longer had the
> $50 given to her for the purchase.   After the police searched Dowdy and her
> vehicle, Dowdy gave a written statement and was released.
>
> Police followed and stopped [Johnson] after he left the area where the controlled
> purchase occurred.   Detective Wignor came to the scene and advised [Johnson] of
> his *Miranda* rights.   [Johnson] said that he spoke with a female.   He was supposed
> to meet her and take her to someone who could give her a half gram of heroin for
> $50.   However, she only had $43, so he told her that he could not take her to
> someone if she was "going to short them."   He told the police that he did not sell
> anything to her that day.   Detective Wignor asked [Johnson] about a bag that was

---

[1]  The police took photographs of the dollar bills before the buy, so that they could record the serial
numbers of the bills.   The police found the same bills on [Johnson's] person after the controlled
buy.   [footnote in decision by Court of Appeals of Virginia].

thrown out of [Johnson]'s car.[2]   [Johnson] told Detective Wignor that he had pancake mix that he was going to sell to the female as "fake product."   When the police searched [Johnson], they recovered the $50 that they had given Dowdy to purchase the drugs.   [Johnson] gave the police permission to look at his cell phone, and his text messages matched those that Dowdy had on her cell phone.

*Id.* at 1–2.   The Supreme Court of Virginia refused Johnson's appeal on April 16, 2018.   ECF No. 9-4.

Johnson filed a petition for a writ of habeas corpus in the Circuit Court for Henrico County on July 17, 2018, raising the following claims:

I.     Ineffective assistance of counsel due to counsel's failure to:

    (a)     challenge the meritless arrest and indictments, undisclosed discovery and witnesses, and manipulation of lab results;

    (b)     request discovery that would have led to the agreement between the confidential informant and the police;

II.    Prosecutorial misconduct:

    (a)     Failure to comply with discovery order;

    (b)     Failure to disclose exculpatory evidence, including the informant's identity and the contents of the informant's communication;

    (c)     Presentation of false evidence; and

III.   Police misconduct and malicious arrest due to racial profiling.

*Johnson v. Clarke*, No. CL18004270-00 (Va. Cir. July 17, 2018).   The circuit court dismissed the petition on September 24, 2018.   ECF No. 9-5.   The Supreme Court of Virginia refused Johnson's petition for appeal on July 23, 2019.   *Johnson v. Clarke*, No. 181540 (Va. July 23, 2019).

---

[2]  The police recovered a small baggie in the middle of the street where [Johnson] was driving after he met with Dowdy.   [footnote in decision by Court of Appeals of Virginia].

3

Johnson timely placed the pending federal petition for a writ of habeas corpus in the prison mailing system on August 20, 2019.   ECF No. 1 at 13.   Johnson presents the following grounds for relief:

    (1)    he was denied effective assistance of counsel due to counsel's failure to:

        (a)    "properly investigate all information whatever form, source, or nature necessary and material for the preparation of the defense";

        (b)    discover information about the confidential informant needed to question her credibility;

        (c)    discover text messages between Johnson and the confidential informant;

        (d)    appear at two important hearings;

        (e)    preserve numerous errors for appeal including defects in the written charge, failure to obtain material discovery, double jeopardy, entrapment, and fruit of the poisonous tree from an alleged positive field test that was later determined to be inconclusive; and

        (f)    set the framework for a proper direct appeal;[3]

    (2)    prosecutorial misconduct resulting in manipulation of the evidence presented to a grand jury; and

    (3)    police misconduct and arrest based on implicit bias, racial profiling, and entrapment.

*Id.* at 5–8; ECF No. 9 at 4.

On November 18, 2019, respondent filed an answer to the petition, pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, and a motion to dismiss the petition, along with a supporting memorandum.   ECF Nos. 7–9.   Johnson filed a response to the motion to dismiss on December 18, 2019.   ECF No. 12.

---

[3] Petitioner does not break down his ineffective assistance claims in ground 1 into these lettered subcategories.   *See* ECF No. 1 at 5, 22–25.   Rather, respondent subdivided the claim in the motion to dismiss, and the Court will adopt these categories to remain consistent.   *See* ECF No. 9 at 4.

## II.   ANALYSIS

**A.   Certain of Johnson's claims have been simultaneously exhausted and procedurally defaulted—Grounds 1(a), 1(c), 1(d), 1(f), and parts of 1(e).**

Before addressing Johnson's claims, the Court must determine whether Johnson exhausted his remedies in state court, *see* 28 U.S.C. § 2254(b), and determine if such claims were procedurally defaulted in state court.  *See Fisher v. Angelone*, 163 F.3d 835, 844, 851 (4th Cir. 1998).   A federal court cannot grant a writ of habeas corpus to a person in custody pursuant to a state court judgment unless that person "has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).   The exhaustion doctrine ensures that state courts have a meaningful opportunity to consider claims alleging constitutional violations before their presentation to a federal court.  *Rose v. Lundy*, 455 U.S. 509, 515 (1982).   The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court."   *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991).   Exhaustion may be achieved either through direct appeal or in post-conviction proceedings.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

Johnson's claims 1(a), 1(c), 1(d), 1(f), and parts of 1(e) have not been presented to the Supreme Court of Virginia on direct appeal or collateral review (habeas proceedings).   This does not, however, end the exhaustion inquiry.   Instead, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000); *see Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (describing the procedural default doctrine as a "distinct but related limit on the scope of federal habeas review").   Simultaneous exhaustion and procedural default occur "when

5

a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).   In that instance, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim."   *Baker*, 220 F.3d at 288.

Before finding a procedural default, it must be "clear" that the pertinent claims are now procedurally barred based upon a state law providing an independent and adequate ground for dismissal.   *Gray v. Netherland*, 518 U.S. 152, 161 (1996); *Breard*, 134 F.3d at 619 (citing *Coleman*, 501 U.S. at 731–32).   A state procedural rule is adequate if it is "regularly or consistently applied by the state courts."   *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)).   A state procedural rule is independent "if it does not depend on a federal constitutional ruling."   *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

Any attempt by Johnson to file a new state petition for a writ of habeas corpus raising claims 1(a), 1(c), 1(d), 1(f), and a portion of 1(e) would be barred as successive under Va. Code Ann. § 8.01-654(B)(2).   *See Pope v. Netherland*, 113 F.3d 1364, 1372 (4th Cir. 1997) (holding that the successive petition rule in Virginia Code § 8.01-654(B)(2) is an adequate and independent state law ground barring federal habeas review).   Thus, these claims can be treated as exhausted because they would be procedurally barred under state law if Johnson attempted to present the claims to the state court.   *Baker*, 220 F.3d at 288.   "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the

petitioner can demonstrate cause and prejudice for the default." *Id.* (citation and quotation marks omitted).

**B.      Johnson's claims 2 and 3 are procedurally defaulted as the state court dismissed these claims pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974).**

Johnson's claims 2 and 3, alleging prosecutorial misconduct and police misconduct, are procedurally defaulted.  "If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim."  *Breard* 134 F.3d at 619 (citing *Coleman* 501 U.S. at 731–32).

The state court held that, because Johnson could have raised claims 2 and 3 at trial or on direct appeal and did not do so, the claim was barred.  ECF No. 9-5 at 3–4 (citing *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974)).   In *Slayton*, the Supreme Court of Virginia held that, because "the original function of the writ of habeas corpus was to provide an inquiry into jurisdictional defects," when a prisoner was "afforded a fair and full opportunity to raise" a non-jurisdictional issue at trial or on direct appeal, such an issue is not cognizable on a petition for a writ of habeas corpus.  205 S.E. 2d at 682.   In short, "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error."  *Id*.   The Fourth Circuit has repeatedly held that the procedural default rule announced in *Slayton* constitutes an adequate and independent state law ground for decision.  *Fisher*, 163 F.3d at 844; *Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1997).   Therefore, claims 2 and 3 are procedurally defaulted.

**C.      No cause exists to excuse Johnson's procedural default.**

A petitioner may overcome procedural default and obtain federal merits review if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice."  *Edwards v. Johnson*, No. 2:10cv339, 2010

7

WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750, and *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)).   To show cause to excuse a procedural default, a petitioner must establish that some "objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see Coleman*, 501 U.S. at 753 (noting that a factor external to the defense is one that "cannot fairly be attributed to" the prisoner).

The only argument Johnson makes to explain his failure to exhaust state remedies is that his counsel failed to timely raise objections and defenses.   ECF No. 1 at 29.   Johnson was not represented by counsel when he filed his state habeas petition.   Nevertheless, the Court will address whether Johnson's lack of counsel on habeas review establishes cause for the default arising from his failure to exhaust state remedies.

The Court in *Martinez* ruled that the ineffective assistance of counsel, or the lack of counsel, during an initial-review collateral proceeding may constitute justifiable cause for procedural default in certain circumstances.   *Martinez v. Ryan*, 566 U.S. 1, 9, 14, 17 (2012).   An "initial-review collateral proceeding[]" is one that "provide[s] the first occasion to raise a claim of ineffective assistance at trial."[4]   *Id.* at 8; *see Davila v. Davis*, 137 S. Ct. 2058, 2065–66 (2017) (declining to extend the exception to defaulted claims concerning appellate counsel's performance, and noting that the narrow exception allows the ineffective assistance of postconviction counsel to constitute cause to surmount default on a single claim—the ineffective assistance of trial counsel—in states that only allow such claims to be brought in state postconviction proceedings).

---

[4] Under Virginia law, a claim that trial counsel was ineffective "must be asserted in a habeas corpus proceeding and [is] not cognizable on direct appeal."   *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001).

"Generally, a federal court may not consider claims that a petitioner failed to raise at the time and in the manner required under state law," but an exception for ineffective assistance claims exists where

> (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the cause for default consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an ineffective assistance claim be raised in an initial-review collateral proceeding.

*Teleguz v. Zook*, 806 F.3d 803, 807–08 (4th Cir. 2015) (citation and quotation marks omitted). Even when such requirements are met, a "finding of cause and prejudice does not entitle the prisoner to habeas relief.   It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted."   *Martinez*, 566 U.S. at 17.

The exception identified in *Martinez* has no application to Johnson's grounds 2 and 3 as they do not involve claims of ineffective assistance of counsel.   The exception can only apply to ground 1.

The final three components of the *Martinez* exception are established with respect to Johnson's ground 1.   Johnson had no counsel during the state collateral review proceeding (factor 2); the state collateral review was the initial review of his claim based on the ineffective assistance of trial counsel (factor 3); and, under *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001), Virginia law requires that such an ineffective assistance of trial counsel claim be raised in a collateral proceeding (factor 4).   This Court must determine whether the ineffective assistance claims in grounds 1(a), 1(c), 1(d), 1(f), and parts of 1(e) are "substantial," such that the first factor for this exception is established.   Only if this exception is established can the Court review the merits of Johnson's habeas claim.   *Teleguz*, 806 F.3d at 807.   A claim is "insubstantial" if it "is wholly without factual support."   *Martinez*, 566 U.S. at 16.

9

1.      **Ground 1(a) – Failure to properly investigate**

Ground 1(a), recited in full states, "[c]ounsel's failure to properly investigate all information whatever form source or nature necessary and material for the preparation of the defense."   ECF No. 1 at 22.   This paragraph may have been intended as an introduction to the grounds that follow.   To the extent Johnson intended this ground to stand alone, Johnson has not offered any facts establishing that this claim of ineffective assistance of counsel is substantial. *See Formica v. Superintendent of Cent. Virginia Reg'l Jail*, No. 7:14cv357, 2015 WL 5561933, at *13 (W.D. Va. Aug. 21, 2015) (finding unsupported and speculative allegations of ineffective assistance of counsel were not substantial), *report and recommendation adopted,* No. 7:14cv357, 2015 WL 5561952 (W.D. Va. Sept. 21, 2015); *see also Walton v. Johnson*, 440 F.3d 160, 178 (4th Cir. 2006) (upholding district court's dismissal of petition and finding "conclusory, speculative allegations" cannot support a claim for habeas relief).

2.      **Ground 1(c) – Failure to obtain exculpatory evidence of text messages**

Johnson asserts in ground 1(c) that counsel failed to move for discovery that would have uncovered "text messages written and recorded statements of the original attempt of the addict and police to lure petitioner."   ECF No. 1 at 22–23.   Johnson argues that a proper investigation "would have led to questioning the credibility of [the confidential informant] and the ambiguous substance of communications, that of text messages."   *Id.* at 23.   Johnson does not proffer what exculpatory evidence discovery of the text messages would have uncovered.

The only reference to the content of any text messages included in Johnson's petition is the assertion that, when the confidential informant ("CI") first contacted Johnson by text and told Johnson she had the money owed to him, he responded that he was 800 miles away.   *Id.* at 17. Johnson does not explain how this text exchange constitutes exculpatory evidence.

Text messages were entered into evidence during Johnson's trial.  ECF No. 9-6 at 22. Officer Wignor testified that when he met with Johnson following the controlled buy, and after getting Johnson's permission, Officer Wignor took pictures of some text messages between Johnson and the CI.  *Id.* at 19, 22.  The text messages were referenced during Johnson's testimony when Johnson attempted to explain why he met the CI, and why she paid him $50.00. ECF No. 9-6 at 58–61.  Johnson testified that he paid the CI and her boyfriend to repair his truck, the work was never performed, and they owed him $170.00.  *Id.* at 57–59.  When the court instructed Johnson to look through the text messages previously entered into evidence between himself and the CI, and answer whether there was any mention of money owed for work on a truck, Johnson answered, "[n]o, sir."  *Id.* at 65.

Johnson also testified that the CI called him and asked whether he had any heroin, and that he had exchanged text messages with the CI referencing heroin.  *Id.* at 60, 65–66.  Johnson testified, "I felt like I needed to get my money by any . . . way possible," and "I started thinking that . . . . I know she wants heroin that maybe I'm going to have to manipulate her in thinking that I got heroin."  *Id.* at 66.

References to text messages in the record indicate that Johnson was 800 miles away the first time the CI texted him, he testified the text messages introduced into evidence did not support his claim that the connection between himself and the CI related to the repair of his truck, and he testified the text messages they exchanged referenced heroin.  Johnson has failed to establish a substantial ineffective assistance of counsel claim due to counsel's failure to discover exculpatory evidence in the form of text messages.

### 3.      Ground 1(d) – Failure to appear at two important hearings

In ground 1(d), Johnson asserts trial counsel failed to appear at two important hearings. ECF No. 1 at 23–24.   Johnson explains that on January 14, 2016, he appeared before a circuit court judge, who stated, "do you know who your attorney is . . . get in touch with your attorney," and continued the case.   *Id.* at 24.   Johnson states he appeared on February 18, 2016, his counsel was not present, Johnson did not know what was going on, and his case was continued.   *Id.*

The state court records reflect that Johnson was indicted on January 11, 2016, and appeared in circuit court without counsel on January 14, 2016.   *Commonwealth of Va. v. Johnson*, Nos. CR15003798-00, 15003820-00 (Va. Cir. Jan. 14, 2016).   At that hearing, the case was scheduled for trial without a jury on February 18, 2016, Johnson was released, and his bond was continued. *Id.*

The state court records reflect that Johnson appeared on February 18, 2016, with his appointed counsel.   *Id.*, Order entered Feb. 22, 2016.   The circuit court's order indicates that on February 18, 2016, "[o]n motion of the attorney for the Commonwealth, [] over the objection from the attorney for the defendant, the Court continues these cases to February 25, 2016 at 9:30 o'clock a.m., for a trial without a jury."   *Id.*

While counsel was not present in court on January 14, 2016, he did appear on the day set for trial and opposed the government's motion for continuance.   Johnson has not explained any basis for finding the outcome of his trial would have been different but for counsel's failure to appear at the hearing held January 14, 2016, and his claim that counsel's failure to appear at that hearing constituted ineffective assistance is not substantial.   *See Formica*, 2015 WL 5561933, at *13; *Walton*, 440 F.3d at 178.

4.      **Ground 1(e) – Failure to preserve numerous errors for appeal**

Johnson alleges in ground 1(e) that counsel failed to preserve numerous errors for appeal, including double jeopardy and entrapment.   ECF No. 1 at 24–25.[5]   Johnson cites caselaw explaining the double jeopardy clause, but fails to address how his convictions violate the clause. *Id.* at 24, 30.   This unsupported and speculative allegation of ineffective assistance of counsel is not substantial.

Johnson makes several references to entrapment in his petition:   (1) "Where a person has no previous intent or purpose to violate the law . . . that person is a victim of entrapment," *id.* at 26 (quoting *United States v. McLaurin*, 764 F.3d 372 (4th Cir. 2014)); (2) "Whether police manufactured the crime, or merely involved themselves in an ongoing criminal enterprise," *id.* at 33; (3) "The denial of effective assistance of counsel demonstrate[]s the failure[] to challenge an operative frame up which prejudiced and denied petitioner's access to proper adversarial process of judicial powers," *id.* at 35; (4) "When police officers enter into an ongoing but flagging criminal enterprise and . . . enlarge its scope, they risk an unacceptable degree of participation in criminal activity . . . [t]hat otherwise would not have occurred—potentially," *id.* at 38 (internal quotations omitted); and (5) "The audacity to use a suffering addict in active addiction who'd been found, then two days later allow such person to spearhead this, now active criminal investigation, without proper inspection of C.I.'s vehicle and observation of such transaction is unethical and unfounded," *id.* at 37.

---

[5] Johnson also asserts counsel failed to preserve for appeal challenges to defects in the institution of the prosecution, the prosecution's failure to turn over material discovery, and fruit of the poisonous tree doctrine stemming from an alleged positive field test that was later determined to be inconclusive.   ECF No. 1 at 24–25.   These claims were raised in his state petition, and will be addressed below.

Entrapment is a defense that has "two related elements:   government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988).   The defendant bears the initial burden to "go forward with some evidence, more than a scintilla, that (the government or its) agents induced him to commit the offense."   *United States v. Perl*, 584 F.2d 1316, 1321 (4th Cir. 1978) (citations omitted).   Courts have recognized the inducement involves offering the opportunity to commit a crime "*plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive."   *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994).   The First Circuit in *Gendron* listed some examples of inducement:

> [W]here government officials:   (1) used "intimidation" and "threats" against a defendant's family; (2) called every day, "began threatening" the defendant, and were belligerent; (3) engaged in "forceful" solicitation and "dogged insistence until [defendant] capitulated"; (4) played upon defendant's sympathy for informant's common narcotics experience and withdrawal symptoms; (5) played upon sentiment of "one former war buddy . . . for another" to get liquor (during prohibition); (6) used "repeated suggestions" which succeeded only when defendant had lost his job and needed money for his family's food and rent; [and] (7) told defendant that she (the agent) was suicidal and in desperate need of money.

*Id.* at 961–62 (internal citations omitted).

Further, "even when the evidence clearly establishes that the government's actions induced the defendant to commit the crime, an entrapment defense fails if the defendant was predisposed to commit the crime."   *United States v. Squillacote*, 221 F.3d 542, 569 (4th Cir. 2000) (citing *Jacobson v. United States*, 503 U.S. 540, 548–49 (1992)).   "[W]hen government agents merely offer an opportunity to commit the crime and the defendant promptly avails himself of that opportunity, an entrapment instruction is not warranted."   *United States v. Ramos*, 462 F.3d 329, 335 (4th Cir. 2006) (quoting *United States v. Harrison,* 37 F.3d 133, 136 (4th Cir.1994)).

The only argument Johnson makes that the officers induced him to engage in the controlled buy is the assertion that they improperly relied on a heroin addict: "[t]he audacity to use a suffering addict in active addiction who'd been found, then two days later allow such person to spearhead this, now active criminal investigation, without proper inspection of C.I.'s vehicle and observation of such transaction is unethical and unfounded." ECF No. 1 at 37. Johnson could be asserting the officers played on his sympathies to help an addict avoid withdrawal. The trial evidence does not support Johnson's entrapment argument.

Officer Wignor testified at Johnson's trial that the CI had been stopped by police for a possession of heroin and paraphernalia charge, and it "was her hope to work off those charges by cooperating." ECF No. 9-6 at 11. Officer Wignor testified the CI knew someone who could provide her drugs for money, she made a recorded phone call with the person, and set up a meeting directly after the call. *Id.* at 13–14. After the CI and her vehicle were searched, Officer Wignor took a picture of $50.00 and gave the money to the CI. *Id.* at 11–12.

The CI drove her vehicle to the location for the meeting discussed in the phone call, and Officer Wignor followed in a separate vehicle. *Id.* at 14. When the CI arrived, Officer Wignor could hear over the wire that she was making and receiving text messages, and the location for the meeting was changed. *Id.* at 14–15. The CI drove to a new location where her vehicle met up with another vehicle. *Id.* at 15. Officer Wignor observed Johnson standing at the CI's driver's side window. *Id.* at 16–17. After the CI left the location and drove to a parking lot, Officer Wignor "recovered a lottery ticket that was found to contain a knotted baggie of brown powder." *Id.* at 18. The CI and her vehicle were searched again, she provided a written statement, and she was released. *Id.* at 18–19.

Officer Degroft testified that he followed Johnson's vehicle after the meeting, that the vehicle stopped, and a plastic bag of material was thrown out of the passenger side window.   *Id.* at 36–38.   Johnson's vehicle then proceeded down another road, where the vehicle stopped and Officer Degroft determined Johnson was the driver and only occupant of the vehicle.   *Id.* at 37.   Approximately, fifteen minutes after the meeting, Officer Wignor read Johnson his *Miranda* rights, and Johnson made a statement that Officer Wignor recounted as follows:

> he said a female had called him the previous day in order to purchase heroin but he was feeling sick.   So she called him again that day.   They were supposed to meet, he was to basically take her to someone who could give her a half gram of heroin for fifty dollars.   She showed up but she only had $43.   He told her that he can't keep on bringing her to people if she is going to short them, so she was going to leave and get more money.

*Id.* at 20–21.   Officer Wignor searched Johnson and recovered the same $50.00 that he previously provided to the CI.   *Id.* at 21–22.

When asked about the plastic bag thrown from the vehicle, Johnson stated that he "had woken up and had filled up a bag with pancake mix with the intention of selling it to the female." *Id.* at 21.   After Johnson allowed Office Wignor to look at his cell phone, Officer Wignor took pictures of a text string with the CI, and the messages were identical to those on the CI's phone. *Id.* at 22.   The lottery ticket with the knotted baggie of brown powder, pictures of the text messages, pictures of the $50.00 before it was given to the CI and after it was recovered from Johnson, the plastic bag thrown from the vehicle window, and the lab report were introduced into evidence.   *Id.* at 18, 23, 42.

The CI testified that after she was stopped by police, she agreed to cooperate and told them she knew someone who would sell her drugs.   *Id.* at 43.   She testified that she contacted Johnson by cellphone, and that they agreed to meet.   *Id.* at 45–46.   The CI testified that she drove to the

meeting location, Johnson approached her car window, she handed Johnson money, and Johnson handed her heroin.  *Id.* at 46.

On direct examination, Johnson testified that the CI called him and asked whether he had heroin, and he agreed to meet her.  *Id.* at 60–61.  Johnson further testified that he met with the CI, she gave him $50.00, he told her that she still owed him $100.00, they got back in their respective vehicles and drove off, and that he did not give the CI anything.  *Id.* at 62.  Finally, Johnson testified that he noticed a vehicle with lights "coming at" him, he opened the passenger door and put a box of pancake mix on the curb because it felt "like a setup," and then he was arrested.  *Id.* at 62–63.

On cross examination, Johnson testified that he exchanged text messages with the CI referencing heroin.  *Id.* at 65–66.  Johnson explained, "I felt like I needed to get my money by any mean[s] possible . . . I know she wants heroin that maybe I'm going to have to manipulate her in thinking that I got heroin."  *Id.* at 66.

The trial evidence does not establish the basis for asserting an entrapment defense.  The evidence as testified to by Officer Wignor, the CI, and Johnson, establishes that the CI contacted Johnson and asked if he would supply her with heroin, and that Johnson agreed to meet the CI.  The evidence shows the government offered Johnson an opportunity to participate in the controlled buy, in circumstances not involving undue influence or pressure, and he "promptly availed himself of that opportunity."  *See Ramos*, 462 F.3d at 335. Accordingly, the evidence presented at trial does not support an entrapment defense, and counsel is not ineffective for failing to make a frivolous argument.  *See Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005).  Accordingly, Johnson's claim that counsel was ineffective for failing to preserve the defense of entrapment is not substantial.

5.    **Ground 1(f) – Failure to set the framework for a proper direct appeal**

Johnson alleged in ground 1(f) that counsel failed to "set[] the framework for a proper direct appeal."   ECF No. 1 at 25.   This paragraph may have been a conclusion to the preceding ground.   To the extent it was intended as a separate claim, Johnson has failed to provide factual support necessary to establish a substantial ineffective assistance of counsel claim.   *See Formica*, 2015 WL 5561933, at *13; *Walton*, 440 F.3d at 178 (upholding district court's dismissal of petition and finding "conclusory, speculative allegations" cannot support a claim for habeas relief).

Further, in grounds 1(a), 1(c), 1(d), 1(f), and the part of 1(e) discussed above, Johnson does not proffer any basis for finding the outcome of his trial would have been different but for counsel's performance.   The Court cannot find that Johnson's ineffective assistance of trial counsel claims are "substantial."   Accordingly, Johnson has failed to establish that cause exists to excuse his procedural default of grounds 1(a), 1(c), 1(d), 1(f), and the part of 1(e) addressed above.

D.    **Johnson has failed to show actual innocence sufficient to open the gateway permitting the Court to address his procedurally barred claims.**

The Supreme Court has recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring procedurally defaulted claims and claims raised after expiration of the statute of limitations.   *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Schlup v. Delo*, 513 U.S. 298, 314–316 (1995); *Finch v. McKoy*, 914 F.3d 292, 294 (4th Cir. 2019). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."   *Herrera v. Collins,* 506 U.S. 390, 404 (1993) (citation omitted).   It "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case."   *Schlup,* 513 U.S. at 324.

To establish actual innocence predicated upon constitutional error, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The exception requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324. If a petitioner provides the court with reliable, newly discovered evidence of his actual innocence, then the court weighs the new evidence in light of the previous admissible and inadmissible evidence and makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329.

The *Schlup* standard is an exceedingly high burden to satisfy and only permits review in "extraordinary" cases. *House v. Bell,* 547 U.S. 518, 538 (2006) (citation and quotation marks omitted); *see also Schlup*, 513 U.S. at 327–29. A petitioner's actual innocence claim "does not by itself provide a basis for relief." *Teleguz v. Pearson*, 689 F.3d 322, 328 (4th Cir. 2012) (quotation marks omitted); *see Herrera*, 506 U.S. at 400 (noting that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings"). Instead, a petitioner's "claim of innocence is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (quotation marks omitted); *see also Teleguz*, 689 F.3d at 329.

Johnson declares that he is innocent of the charges against him. ECF No. 12 at 2, 4–5. In his response to respondent's motion to dismiss, Johnson explains that he knew the CI and her boyfriend, who did odd jobs in the neighborhood; Johnson paid the CI's boyfriend to repair his

truck, a task that was never completed; the CI texted him on August 17, 2015, stating that she had

$50.00 they owed Johnson; he later met the CI; the CI handed him the $50.00, told him she was

sorry and would explain later, and drove away; and, he was approached by the police.   *Id.* at 4–5.

Johnson testified to all of this at his trial, and counsel reiterated this version of events in closing.

ECF No. 9-6 at 57–63, 71.

Johnson has offered no new, reliable evidence that was not presented at his trial making it

more likely than not that no reasonable juror, or judge, would have convicted him.   Johnson has

not satisfied the high standard to pass through the actual innocence gateway, and the Court cannot

consider his procedurally-barred habeas claims.   *See McQuiggin*, 569 U.S. at 397.

**E.   Johnson is not entitled to habeas relief on his ineffective assistance of counsel claims, ground 1(b) and part of ground 1(e), which were addressed on the merits in his state habeas appeal.**

When a claim has been properly exhausted and adjudicated on the merits in state court, this

Court assesses the state court adjudication pursuant to 28 U.S.C. § 2254(d), rather than reviewing

the merits of such a claim *de novo*.   Section 2254(d) provides that a federal court may not grant

relief on any claim that was adjudicated on its merits in state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law when a state court

applies a rule different from the governing law articulated by the United States Supreme Court or

arrives at a conclusion opposite that of the Supreme Court on materially indistinguishable facts.

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted); *Williams v. Taylor*, 529 U.S. 362, 412–

13 (2000).   A state court decision constitutes an "unreasonable application" of federal law when the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case.   *Williams*, 529 U.S. at 413; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that an unreasonable "application of clearly established law must be objectively unreasonable," rather than simply "incorrect or erroneous").   Stated differently, a "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."   *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

"For a state court's factual determination to be unreasonable under [section] 2254(d)(2), it must be more than merely incorrect or erroneous.   It must be sufficiently against the weight of the evidence that it is objectively unreasonable."   *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010) (citation omitted).   Pursuant to this deferential standard of review, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."   *Williams*, 529 U.S. at 389.

To review a claim of ineffective assistance of counsel, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt."   *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (citation and quotation marks omitted). The applicable standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687–700 (1984), requires a petitioner to show that his defense counsel provided assistance that (1) fell below an objective standard of reasonableness, and (2) prejudiced petitioner as a result.   To establish that counsel's performance fell below an objective standard of reasonableness, Johnson must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed

the defendant by the Sixth Amendment." *Id*. at 687.   In doing so, Johnson must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"  *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, Johnson must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.   This requires Johnson to establish "probability sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding."  *Id*. at 693–94.   A federal habeas court need not address both cause and prejudice if the petitioner makes an insufficient showing on either one.   *Id*. at 697.   Because Johnson presents these claims in a section 2254 petition, he must show that the state court's dismissal of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, the *Strickland* standard, or was predicated upon an unreasonable determination of the facts in light of the evidence presented.   28 U.S.C. § 2254(d).

### 1.    Ground 1(b) – Failure to discover information about the CI that would enable counsel to question her credibility

In ground 1(b), Johnson asserts he was denied effective assistance of counsel due to his trial counsel's failure to discover that the CI was a heroin addict who was found committing a crime and was offered a deal by law enforcement.   ECF No. 1 at 22.   Johnson argues that discovering this information would have led to counsel's questioning the credibility of the CI.   *Id.* at 23.

The Supreme Court of Virginia found that Johnson's claim did not satisfy the performance or prejudice prongs of *Strickland*, stating:

> The Court finds that the information Johnson alleges was withheld from him relating to the confidential informant and her own drug possession is fully developed in the record.   Counsel was able to use this information at trial and on appeal to impeach the informant, both by cross examining the police officer and the informant herself, and to argue that the informant was lying to avoid her own felony charge and frame Johnson.   Johnson fails to demonstrate what additional steps counsel failed to take and how he was prejudiced by counsel's alleged failures.

ECF No. 9-5 at 6 (citing *Muhammad v. Warden of Sussex I State Prison*, 646 S.E.2d 182, 195 (Va. 2007) (dismissing petitioner's claim where he failed to identify with specificity the factual basis to support his claims)).

In his federal petition, Johnson states that one factor courts consider when weighing the credibility of an informant is whether the informant is a drug addict, which "may affect the memory and perceptive abilities of the informant, and that habitual users of narcotics are known to display a penchant for lying."   ECF No. 1 at 31.   He further argues that "'the court must provide an explicit cautionary instruction on the unreliability of paid informers who are also drug addicts.'" ECF No. 12 at 8 (quoting *United States v. Kinnard*, 465 F.2d 566, 569 (D.D.C. 1972)).

The fact that the CI was a drug addict who cooperated with the police officers to avoid charges for drug possession was addressed during Johnson's trial:   (1) Officer Wignor testified that the CI was a heroin addict who had been stopped for possession of heroin, and who "was hoping to work off those charges by cooperating," ECF No. 9-6 at 11, 19; (2) the CI testified that she had been using heroin for nine months prior to the incident, she had been stopped by police, and she agreed to cooperate, *id.* at 43, 53; (3) at the close of the Commonwealth's evidence, and again at the close of all evidence, Johnson's counsel moved to strike the Commonwealth's case, in part, because the CI was going to be granted immunity in a felony offense, and had "a motive to lie" and "a reason to make a fabrication," *id.* at 54–55, 68; and (4) Johnson's counsel restated these arguments during closing argument, *id.* at 69.   In addition, Johnson's counsel questioned the

CI about her criminal record, eliciting testimony that she had been convicted of a felony for obtaining utilities illegally from Virginia Power.   *Id.* at 52–53.   Thus, the issue of the CI's credibility was fully addressed during Johnson's trial.   Further, because Johnson had a bench trial, no cautionary instruction regarding the reliability of a drug addict was necessary.

In his petition, Johnson does not proffer any information counsel could have uncovered in discovery and used at trial to cross-examine or impeach the CI that was not already used by counsel during his trial, and has not explained how the result of his trial would have been different through counsel's use of additional impeachment.

The Supreme Court of Virginia's dismissal of Johnson's ineffective assistance of counsel claims was not contrary to, or an unreasonable application of, the *Strickland* standard, and was not predicated upon an unreasonable determination of the facts in light of the evidence presented. Therefore, Johnson's ground 1(b), asserting his counsel was ineffective for failing to discover information to discredit the CI, should be **DISMISSED**.

> **2.    Ground 1(e) – Failure to preserve errors that would have resulted in his acquittal**

In a portion of ground 1(e), Johnson asserts he was denied effective assistance of counsel due to counsel's failure to preserve several errors for appeal, including defects in the prosecution, defects in the written charge, fruit of the poisonous tree argument based on an alleged positive field test that was later determined to be inconclusive, and failure to obtain material discovery. ECF No. 1 at 24–25.   Johnson exhausted this portion of his claim by raising in the state court counsel's failure to challenge his meritless arrest, indictments, discovery, witnesses, and the manipulation of lab results.   ECF No. 9-5 at 5.   The Supreme Court of Virginia found that this claim did not satisfy either prong of the *Strickland* test, stating:

> The Court finds that Johnson fails to sufficiently plead a *Strickland* claim because he provides no factual support for his conclusory allegations.   *See Muhammad*, 274 Va. at 19, 646 S.E.2d at 195 (dismissing petitioner's claim where he failed to identify with specificity factual basis to support claims).
>
> . . .
>
> The Court further finds that as Johnson has failed to provide any support for his allegations, he has also failed to show an objection to his arrest, the indictments, discovery, witnesses, or lab results would not have been frivolous.   Counsel is not ineffective for not filing a frivolous motion or objection.   *See Correll v. Commonwealth*, 232 Va. 454, 470, 352 S.E.2d 352, 361 (1987) (holding counsel had no duty to object to admission of presentence report because it was admissible).   Therefore, the Court finds that Johnson has failed to demonstrate deficient performance or prejudice as required by *Strickland* and his claim is dismissed.

*Id.* at 5–6.

In his federal petition, Johnson does not elaborate on the basis for the claims that counsel failed to object to defects in the prosecution, failed to object to defects in the written charge, and failed to make a fruit of the poisonous tree argument based on an alleged positive field test that was later determined to be inconclusive.   ECF No. 1 at 24–25.   Johnson asserts counsel failed to obtain discovery showing the CI "tampered with evidence that ended in a discrepancy of lab findings."   *Id.* at 26.   Johnson does not, however, proffer any information counsel could have uncovered in discovery that would show tampering had occurred.[6]   Due to Johnson's failure to proffer facts to support any of these arguments, this portion of ground 1(e) should be **DENIED**.   *See Walton*, 440 F.3d at 178 (upholding district court's dismissal of petition and finding "conclusory, speculative allegations" cannot support a claim for habeas relief).

---

[6] The lab report introduced into evidence reflects that two pieces of evidence were analyzed. *Commonwealth v. Johnson*, No. CR15003798-00, CR15003820-00 (Va. Cir. Mar. 24, 2016), Commonwealth's Ex. 6.   "[N]o controlled substances [were] found" in "one knotted plastic bag containing off-white powder." *Id.*   The "one paper fold containing one plastic bag corner containing tan powder," however, was found to contain heroin.   *Id.*

In the last portion of ground 1(e), Johnson asserts, without elaboration, that his counsel was ineffective for failing to obtain material discovery.   ECF No. 1 at 25.   In other areas of the petition, Johnson asserts counsel was ineffective for failing to discover impeachable information regarding the CI, which is addressed in the section analyzing ground 1(b) above.   In his response to the motion to dismiss, Johnson states that the duty to disclose exculpatory evidence "encompasses impeachment evidence," and he references "the informer's honesty, veracity, and basis of knowledge."   ECF No. 12 at 5–6.   Johnson has proffered no new impeachable evidence regarding the CI that was not used by counsel for impeachment at his trial.

Elsewhere in his federal petition, Johnson asserts counsel was ineffective for failing to discover exculpatory text messages, which is addressed in the section analyzing ground 1(c) above. Johnson has proffered no exculpatory text messages, and has not explained how the result of his trial would have been different through counsel's use of additional impeachment or reference to text messages.

The Supreme Court of Virginia's dismissal of Johnson's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, the *Strickland* standard, and was not predicated upon an unreasonable determination of the facts in light of the evidence presented. Therefore, this portion of Johnson's ground 1(e) should be **DISMISSED**.

### III.    RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 7, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.   Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.   *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 10, 2020

27

## <u>Clerk's Mailing Certificate</u>

A copy of the foregoing was provided electronically to counsel for respondent and was

mailed this date to:


      Rashee Donell Johnson
      700 Stonemeadow Drive
      Glen Allen, VA 23060


          Fernando Galindo, Clerk


          By  /s/ J.L. Meyers
                Deputy Clerk


          April  10  , 2020

28